THE HONORABLE MARSHA J. PECHMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR09-0084-MJP |
| Plaintiff, | ) ) | |
| v. | ) ) | DEFENDANT DAVID SOBOL'S SENTENCING MEMORANDUM |
| DAVID SOBOL, | ) ) | |
| Defendant. | ) ) | Sentencing Date:  12/04/2009 at 3:00 p.m. |
| | ) | |

**Introduction**

David Sobol comes before this Court at the age of forty for sentencing for the first time in his life.  He will stand, ashamed and remorseful, before Your Honor and before his family and the community.  David is loved as a father, son, brother, and cherished friend.  *See* Letters attached as Exhibits 1 and 2.  He entered a guilty plea to one count of Conspiracy to Commit Bank, Mail and Wire Fraud with an agreed loss amount of more than $2.5M and less than $7M, which was also adopted by U.S. Probation.  PSR ¶ 41.

We submit that the Total Offense Level is 21 (BOL 6, + 18 for loss amount, - 3 for acceptance of resposibility), and combined with Criminal History Category I (0 points), the advisory guidelines range is 37 to 46 months in custody.   After consideration of the Section 3553(a) factors, we respectfully urge this Court to impose a sentence of no more than 18 months

Defendant David Sobol's Sentencing Memorandum in case
no. CR09-0084-MJP
– page 1 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

in custody, with credit for the 3 ½ months in custody at the FDC and 5 months of electronic home detention he has already served.  Defense respectfully recommends that a sentence of probation that requires 12 months custody in a community corrections facility (halfway house) is more appropriate than a straight custodial sentence of 18 months.  First, if sentenced to 18 months in prison, with good time and pretrial custody credit, Mr. Sobol would serve about another 12 ½ months.  Second, BOP has the authority to release inmates early to community corrections facilities and would very likely release Mr. Sobol to a halfway house for the final six months of his sentence.  Finally, if David Sobol can serve the entire 12 months at a halfway house he will be able to continue looking for employment and is likely to secure employment sooner.  U.S. Pretrial Services, in its RSR to the Court has reported that David has been involved in their job training program.  Once employed, he can begin paying restitution.  He would also be required to contribute to the cost of his stay at the halfway house, which would reduce the cost to the community of punishing him.  Such a sentence also would result in less punishment for his young children.  The community corrections facilities are strictly run, and David would be permitted to leave only to work.  While defendants who have substance abuse issues may be at greater risk of relapsing with a halfway house placement as opposed to a secure facility, David does not have a substance abuse issue.  PSR at ¶ 66.

Since his arrest, David has complied fully with all requirements imposed by the BOP, the U.S. Attorney's Office, the Pretrial Services Office and, not least, this Court.  Given the severity of the life-long consequences of this felony conviction and the impact that the large amount of restitution that he will be required to pay will have on his children's and his standard of living, a lengthier prison sentence would be greater than necessary and would defeat some of the stated goals of sentencing.

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP
– page 2 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

Defense disagrees with the assertion in the last sentence in ¶ 89 of the PSR that a minimum term of the range in this case must be satisfied by imprisonment.  Probation ignores the current state of the law, as defined by the Supreme Court in *United States v. Booker* , 543 U.S. 220, 245, 128 S. Ct. 586, 597 (2005) (the guidelines are merely that – guidelines, advisory and not binding); *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 602 (2007) (affirming non-guidelines sentence as reasonable); *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558, 570, 169 L.Ed.2d 481 (2007) (guidelines factor may not be given more weight than any other factor and sentencing judges may vary from advisory range based solely on policy considerations, even based on disagreement with the policy underlying the suggested range); and *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007) (district court may consider arguments that the advisory range fails to reflect the factors set forth in 18 U.S.C. § 3553(a)).

The Court spoke again this year in *Nelson v. United States*, 555 U.S. ___, ___ S. Ct. ___ (2009):

> Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.  In *Rita* we said as much, in fairly explicit terms:  "We repeat that the presumption before us is an *appellate* court presumption, … [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  551 U.S. at 351.  And in *Gall v. United States*, we reiterated that, 552 U.S. ___ (2007), we reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable." *Id*. at ___(slip op., at 11-12).

> In this case the Court of Appeals quoted the above language from *Rita* but affirmed the sentence anyway after finding that the District Judge did not treat the Guidelines as mandatory.  That is true, but beside the point.  The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable. … [Here] the sentencing judge … did apply a presumption of reasonableness to Nelson's Guidelines range.  Under our recent precedents, that constitutes error.

> *Nelson*, 555 U.S. at _____.

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP
– page 3 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

The law gives the Court wide latitude and enormous discretion to consider all of the factors set forth in 18 U.S.C. Section 3553 in fashioning a just sentence for the flawed human being who stands before Your Honor.  Section 3553(a) requires a Court to fashion a sentence that is "sufficient, but not greater than necessary to comply" with these objectives:

> (a)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,
> (b)  to afford adequate deterrence to criminal conduct,
> (c)  to protect the public from further crimes of the defendant,
> (d)  to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.
> 18 U.S.C. Section 3553(a)(2).

Section 3553(a) further directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentencing disparity and the need to provide restitution.  Moreover, punishment comes in many forms and time in custody is merely one.  In *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), the Court of Appeals affirmed as substantively reasonable a sentence of probation for a defendant convicted of possession of child pornography, whose advisory guidelines range was forty-one to fifty-one months in prison.  In affirming the sentence, the Ninth Circuit observed that a sentence of probation with various conditions restricting Mr. Autery's liberty *is* punishment, and that such a sentence does promote respect for the law.  *Id*. at 875.

**The Offense, Respect for the law, and Just Punishment**

A probationary sentence of five years that includes the condition of 12 months incarceration at a community corrections facility, with the conditions set forth in the PSR, would further the goals of just punishment, deterrence and rehabilitation by helping David Sobol re-establish himself in the community sooner, giving him a greater chance of paying all the

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP
– page 4 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

restitution he will owe.  Such a sentence would also promote respect for the law by not imposing

an overly harsh and formulistic sanction on a first-time offender whose post-offense conduct

shows he has already been deterred from future crimes.  David's life prior to his involvement in

this offense demonstrates his pro-social nature and empathetic character.  The attached letters

from family members (Ex. 2) and friends (Ex. 1) describe many acts of kindness and compassion

by David towards others.  For example, a friend, Sophia Feist, describes how David lent her

money years ago when she "was in a very dire financial situation" and never asked her to repay

the loan although she eventually did repay it.  Ex. 1 (fourth letter).

Defense acknowledges the offense conduct was serious.  The sum of several individuals'

actions unfortunately increased the damage done.  Unindicted coconspirators also caused harm.

Indeed, some of the banks who come forward now in sheep's clothing were complicit.  Before

the music died, the banks were realizing large profits and paying large commissions to their

employees for funding "liar loans."  Banks such as WAMU were unhesitating in jumping on the

"liar loans" wagon.  *See* Alla Sobol's Sentencing Memorandum at 11, lines 3-15.  The bank's

supervisory employees used lax standards because they believed the real estate market would

continue to escalate (how many people at the height of the real estate market commented that

nobody could make more land so of course prices would continue to rise) and they intended in

some instances to sell the loans to another financial institution.  *See* Government's Sentencing

Memorandum Re:  David Sobol at 15, lines 15 -20 (describing "relaxed loan underwriting

standards").  AUSA Carl Blackstone has commented that if the banks had been diligent this

fraud would not have been possible.  For example, the banks did internal appraisals of the real

property and would charge a fee for these appraisals, surely they would have recognized the

Defendant David Sobol's Sentencing Memorandum in case
no. CR09-0084-MJP
– page 5 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

inflation in appraisals offered by the loan officer defendants in this case and would have rejected them had they not been in such a rush to fund loans.

David Sobol did not know anything about the business of mortgage loans until he married Alla Sobol.  He worked for fourteen years at Godfather's Pizza, until late 2004, PSR at 73, and worked for seven of those fourteen years (from 1997 through 2004) at an import-export business specializing in food safety.  PSR at 72.   After he met Alla she encouraged him to get involved in real estate sales and he obtained his real estate agent's license in October 2005.  She later introduced David to codefendant Vlad Baydovskiy and she and Mr. Baydovskiy recruited him to be one of the operators of Emerald City Escrow.  PSR at 24-25.  David became acquainted with all of his codefendants, other than Ms. Thorpe, whom he never met, through Alla.

The government claims that David worked as a real estate agent for "a couple of years before starting Emerald City Escrow."  Govt's Sentencing Memorandum at 16, lines 19-20.  He did not.  He began working as a real estate agent in October 2005, when he became licensed and began to work as an independent contractor with Skyline Properties.  PSR at 71.  Emerald City began operating in February 2006.  PSR at 25.  David Sobol had been a real estate agent for a little over four months when Emerald City began operating.  Moreover, most real estate agents have limited knowledge of escrow operations, and David certainly did.  All in a proffer stated that only Donata knew at the start of escrow "how to do HUD[s] and no – nobody else did." (Govt. Bates No. JNKS_002158)  The prosecutor asked if David had been in that business before and Alla replied:  "Never, he didn't even know what yields [spread premium], I mean, he had no idea."  (Govt. Bates No. JNKS_002158)

Vlad and Alla recruited David to become an owner/operator of Emerald City Escrow by explaining to him that Vlad's wife, Donata Baydovskiy aka Neta Brenner, had escrow

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP – page 6 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

experience, having worked at escrow companies from late 2002 (including at Escrow Authority, a company whose principals have been indicted in *United States v. Anderson, et al.*, CR08-212-RAJ) and Stewart Title.  She had also taken two courses on escrow at Bellevue Community College (Escrow Adavanced 1 and 2), according to the resume she proffered at the time Emerald City Escrow was formed.  Vlad also enticed David to work at Emerald City Escrow by explaining to him that an attorney, J.K., would be the actual escrow agent who would hold the state license.  RCW 18.44.021 requires persons acting as escrow agents to be licensed by the state but subsection 2 of that statute exempts from the special licensing requirement:  "Any person licensed to practice law in this state while engaged in the performance of his or her professional duties."  Vlad explained that J.K. would be the official escrow agent who would ultimately supervise all closings at Emerald City.

It is not entirely clear why the government chose not to indict J.K. without whose law license the indicted defendants could not have caused Emerald City to be formed and to operate.  According to the government's Fraud Book, Ex. A to Declaration of James C. Vach Re:  Lender Loss, Dkt. # 211, Attachment 1, J.K. was the "Escrow Agent" i.e., the person who closed five of the loans that contained fraud (Exhibits 27D, 27F, 27KK, 27Y, 27FF).  J.K. also received some of the fraud proceeds because he was paid a salary by Emerald City.  He also received free rent for his law practice which he ran from the Emerald City offices for a period of time.  He admitted under oath in a civil deposition (relating to a civil lawsuit against J.K. and some of the defendants) that he was the person responsible for managing the escrow and the person responsible for seeing that funds were properly disbursed.  (Govt. Bates No. JNKS_001307)

In the initial months of Emerald City's operations, David looked to Donata and J.K. for guidance and training.  Alla stated in a proffer that because Donata had experience working in

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

escrow and because David had none ("he didn't even know what a HUD was"), Donata "was

supposed to train him and they were supposed to run escrow together." (Govt. Bates No.

JNKS_002151)  David was initially tasked with ordering office equipment and supplies. He also

did marketing.  Emerald City had many clients other than Kobay/Nationwide.  PSR at ¶ 14 (final

sentence).  David came to understand, however, that he was facilitating fraud and he continued to

do so.  For that failure, he has suffered severe consequences and faces even more severe

consequences.  He also feels ashamed for failing his family and himself.

David Sobol closed seven loans that contained fraud according to the government's Fraud

Book, only two more than J.K.  *See* Ex. A to Vach Decln. at Dkt. # 211, Attachment 1.  The

loans listed as being closed by David are Exhibits 7A, 7E, 13F, 27C, 27S, 27T and 50H.  The last

loan that David closed that is included in the Fraud Book closed on January 11, 2008 – over a

year and three months prior to his arrest.  The earliest is October 19, 2006 (Exhibit 7E on Ex. A

to Vach Decln.).  In contrast, Donata (referred to as Neta Brenner on the Fraud Book) closed

**forty** loans that contained fraud, over a time period ranging from June 5, 2006 (Exhibits 25I and

25G on Ex. A to Vach Decln.) to September 29, 2008 (Exhibit 44C on Ex. A to Vach Decln.).

In summary, David trusted others, primarily Vlad, Alla, Donata and J.K. to instruct him.

He should have stopped when he realized he was being instructed to cross the line into

misrepresentations.  He did not.  He is being punished for his crime by being convicted of a

federal felony for life, losing important civil rights (which as a naturalized American citizen he

cherished, such as serving as a juror – he has served in the past and received a summons last

week, which he had to return indicating that he is now disqualified, and of course the right to

vote), losing his reputation in the community and his privacy, losing his ability to be present for

his children, being devastated financially, losing his liberty by incarceration at the FDC and

Defendant David Sobol's Sentencing Memorandum in case
no. CR09-0084-MJP
– page 8 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

continued EHM as well as strict supervision conditions, losing his ability to make decisions about how to live his life.  And he will accept this Court's judgment as to additional punishment.

**Loss Amount**

It is a fair observation that the loss amount in this case is inflated because the crash in real property prices was caused by many factors beyond the control of these defendants, market forces affected by the larger United States economy and even the global economy as well as by governmental policy that let a largely unregulated mortgage industry fund very risky loans.  And yet the loss amount accounts for a large 18-level increase to the base offense level pursuant to U.S.S.G. Section 2B1.1(b)(1), or in other words "is a critical determinant of the length of a defendant's sentence."  *United States v. Rutkoske*, 506 F.3d 170, 179 (2d Cir. 2007).

The Second Circuit Court of Appeals, in *Rutkoske*, reversed a sentence in which the loss amount was calculated pursuant to U.S.S.G. Section 2F1.1(b)(1) (relating to securities fraud). The Court of Appeals held that a district court must determine the extent to which a defendant's fraud, as distinguished from market or other forces, caused shareholders' losses by using the test set forth in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  *Rutkoske*, 506 F.3d  at ___. The task requires a reasonable estimation of loss amount by disentanglement of the underlying value of the real property, inflation of that value due to the fraud and deflation of that value due to unrelated market forces.  *Id*. at ___.  This reasoning applies to mortgage fraud as well as securities fraud.

The Standard & Poor's/Case-Shiller home-price index of house prices in 20 major cities is 30 percent below its peak in April 2006.  *See* Seattle Times article dated November 24, 2009 attached to this Memorandum as Exhibit 3.  A sentence of imprisonment below the advisory guidelines range is justified in part because the large loss amount is attributable to market forces

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP
– page 9 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

beyond the control of these defendants.  The current appraisals on properties that the banks still hold securitized interest in are coming in very low because market conditions have changed dramatically since the loans were funded.  The government and probation officer agree that the advisory guidelines custody range is simply too high to constitute a reasonable sentence for David.

The Newcastle property that is listed in the PSR at ¶ 29 as a representative transaction reflects the dramatic increase in property values between 2005 and 2007.  Alla Sobol purchased the undeveloped lot that eventually became this residence in a new development prior to her marriage to David.  She then transferred ownership of the residence to David via quit-claim deed prior to the sale to Camie Byron.  Alla locked in the purchase price of $669,950 by entering into a Purchase and Sale Agreement in August 2005, PSR at ¶ 30, almost two years before the real estate market in the greater Seattle area peaked in May 2007.  *See* Ex. 3 to this Memorandum (Seattle Times article at top p.2).  Ms. Byron has told the government that the $1,000,000 sales price that she agreed to in August 2007 was, she believed, the fair market value for this residence at the time.  Ultimately the loss amount sustained by a bank on this residence is $143,113.  PSR at ¶ 34.  A tragic aspect of this case is that the defendants could have realized profits from real estate investments without committing fraud.

Neither David nor Alla, however, engaged in the type of fraud in which "a significant portion of the loan proceeds were diverted to the co-defendants without the knowledge of the borrowers, leaving the borrower with less proceeds and an overvalued property."  Govt's Sentencing Memorandum Re:  Alla Sobol at 19, lines 8-10.  Alla did not structure such loan deals and David did not close such loans.  An example of the type of transaction which the government refers to is the transaction which forms the factual basis of Vlad's Plea Agreement.

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

Dkt. # 186.  Pages 9 to 11 contain some of the facts regarding the transaction involving a house in Medina, WA ostensibly purchased by M.B.  Page 10 at lines 22-23 refers to instructions to the lender coming from "another member of the conspiracy at Emerald City Escrow."  AUSA Oesterle has admitted in writing to counsel that the government has no evidence that David Sobol participated in the closing of this transaction.  The government's Fraud Book, Ex. A to Vach Decln., Dkt. # 211, lists this property as Ex. No. 21A and the escrow agent is listed as Neta Brenner.  There is credible evidence that in fact neither Alla nor David knew about the transaction until well after the fact (Victor Kobzar and Camie Byron have both told the government this).

It is ironic that Vladimir Baydovskiy, who created the fraudulent scheme and was its most devoted adherent and should therefore be ordered to pay the most restitution, will probably end up paying less restitution than the other defendants because he will likely serve a longer prison sentence.  A positive result of this prosecution is that David has learned never to compromise his personal integrity because someone else suggests he should do so to make money.  All of the money he earned in the fraud was seized by the government and he is in serious debt.  The sentencing memorandum filed by Alla suggests that the government seized only her funds.  The government's forensic analysis of the Sobols' assets shows that the money seized was community property.  The only seized asset that David has asked the government to return is approximately $29,000 in a UGTMA account for which his daughter is the beneficiary and of which his ex-wife, Renata Sobol, is the custodian.  David began a custodial account for his daughter prior to his marriage to Alla and the money he accumulated was incorporated into this account.

//

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

**Role Adjustment**

David Sobol objects to a 3-level increase for allegedly being a supervisor of criminal activity.  Neither U.S. Probation nor the government has told counsel who David allegedly supervised in criminal activity.  There were two other persons who did close some Emerald City files, whose initials are H.F. aka H.M. and J.V.  Vlad recruited J.V. to work at Emerald City and both he and Donata told David that she would not need supervision because she had prior experience working in escrow.  After J.V. left, the Emerald City principals agreed to hire H.F. aka H.M., with whom Alla had previously worked when she was at Central Banc.  Again, she knew how to close loans and David did not supervise her work.  The closing instructions from ING Bank to Emerald City regarding a property on which H.F. aka H.M. was the unqualified borrower (23012 NE 189th St., Woodinville) was sent to the attention of Neta Brenner, not David.  (Govt Bates No. ING_000689)

The government argues that because David managed the day-to-day office operations at Emerald City, the court should add 3 levels to his offense level pursuant to U.S.S.G. § 3B1.2.  Govt's Sentencing Memorandum at 14, lines 1-10.  The guidelines provide that a person's title is not controlling in determining whether a role adjustment is appropriate.  U.S.S.G. § 3B1.2., Application Note 4.

Application Note 4 further instructs the Court to consider the following factors in making such a determination:  "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  *Id*.  David had no decision-making authority over Donata or J.K., much less over the

Kobay/Nationwide defendants. In fact the loan brokers, i.e. Vlad, Victor, Alla and Camie, exercised authority over the escrow defendants by structuring the fraud and telling the escrow defendants how to create differing HUD statements. *See* Alla Sobol's Sentencing Memorandum at 17, lines 1-2 ("loan officers drawing up escrow instructions inevitably provide some level of direction to the escrow officers executing those directions"). Camie Byron in a proffer explained that Alla took an active role at Emerald City. "Alla would tell David, you need to do X, Y, Z and he did it .... So basically she would, she would stand there, a lot of times Alla did not do the HUD's but she would be either standing over David's shoulder, over Neta's should [saying] and do this, do that, change this, do that." (Govt Bates No. JNKS_002414)

While the government credits Alla, Camie and David for their forthright and honest cooperation in the investigation, Alla points out that she has given the most proffers. Alla Sobol's Sentencing Memorandum at 20, lines 16-23. That the government's investigators have interviewed her so extensively corroborates her superior knowledge of the offense and her extensive knowledge of other persons in the industry who are involved in fraud. David provided all of the information he knew in one proffer session. He simply does not know as much as Alla or Camie and is not as culpable. He was however honest and he is of course bound by his Plea Agreement to cooperate fully (such as providing testimony for the government) at any time he is requested to do so.

Donata much more frequently participated in closing transactions in which there was fraud, as shown in the government's fraud book, closing forty versus seven of the fraudulent loans. Ex. A to Vach Decln. at Dkt. # 211. David did not recruit any accomplices; he did not recruit any straw buyers. The house purchases and sales made by the Sobols were all orchestrated by Alla. David never claimed he had the right to a larger share of the fruits of the

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP – page 13 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

crime, nor did he receive a larger share.  Defense will prove prior to the restitution hearing that Vlad received the largest share.  David did not plan or organize the offense, rather he was recruited by Vlad and Alla into working at the escrow company, in a business foreign to him. During the conspiracy he did not understand the entirety of the scheme.

The scope of David's specific acts of illegal activity (as opposed to coconspirator acts that he arguably reasonably should have foreseen) is quite small compared to all other codefendants, other than Ms. Thorpe.  David did not exercise authority over anyone else.  Donata independently of David and J.K. closed transactions brokered by Vlad, Victor Kobzar and Alla. All three principals at Emerald City (David, Donata and J.K.) had signature authority over the business and IOLTA accounts and all three disbursed funds from the accounts.  After David and J.K. closed Emerald City's operations in December 2008, Donata told authorities in 2009 that David and J.K. did not have the authority to close Emerald City and that she did not agree to the business's closing.  An investigating police officer contacted Donata after David and J.K. complained to the Bellevue Police Department about a fraudulent transaction that Vlad purportedly used Emerald City Escrow to close **after** J.K. closed the business.  During Bellevue Police Department's investigation David also told the police where Emerald City Escrow's files were and gave them the combination number to the lock at the storage unit.  The police allowed federal investigators to place a tracking device on David's car because they thought that he might try to destroy Emerald City records.  David did not destroy any records but in fact took steps to preserve the records.

Given that the Court can increase the base offense levels of Vlad and Alla by only four levels, a three-level increase for David creates an unfair disparity.  Counsel understands that probation is not going to apply a three-level increase to Donata's offense level for being a

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP
– page 14 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

manager/supervisor because she was not as actively involved during the day at Emerald City. This creates an unfair disparity between two defendants who share more similarities than differences: both were married to loan broker defendants, both were recruited by other defendants, both closed transactions and disbursed funds from Emerald City accounts as instructed by the loan brokers, and both profited from the fraud. It also ignores significant differences: David's last involvement in a transaction involving fraud was in January 2008, whereas Donata continued to work in escrow until her arrest in late March 2009. Emerald City Escrow had many clients (over 30) other than Kobay/Nationwide. "Emerald City closed mortgage lending transactions by entities other than Kobay and Nationwide that were not alleged to be part of the conspiracy herein." PSR at ¶ 14 (final sentence). The fact that David ordered office supplies for Emerald City and was present during business hours does not equate to him supervising criminal activity of others. Donata may have left the office earlier in the day but she also closed almost six times the number of fraudulent loans that David closed.

**More than 10 Victims and Sophisticated Means**

David objects to the application of both enhancements to his base offense level (probation agrees that sophisticated means does not apply in this case). The government alleges that ten lenders have presented evidence of loss and therefore are victims. Govt's Sentencing Memorandum at 13, lines 19-28. Defense has asked the government about the purported loss claim by American Home Mortgage. The government's Losses from Lenders spreadsheet (Ex. B to Vach Decln. at Dkt. # 211, Attachment 2) does not include any dollar amount for loans held on 8245 NE 26th St., Medina by Amerian Home Mortgage (nos. 6 and 7 on spreadsheet). The government has not produced documents relating to loss calculations as to these loans. The government's investigation revealed that the second mortgage for $350,000 funded on this

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP
– page 15 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

property was actually originated by none of the defendants in this case and was closed by none

of the defendants in this case.  Moreover, this line of credit was paid in full according to the bank

records obtained by the government.  The government has the burden of proving more than 10

victims and has failed to do so.

**David Sobol's History and Characteristics**

David Sobol has benefitted from the love and support of his mother, Alla Katkov.  PSR at

¶ 58.  In her letter to this Court (Ex. 2, third letter) she expresses shock and disappointment at

David's crime and explains that she raised him to be "proud to be American."  She fled Soviet-

controlled Ukraine with David and his estranged father because as a Jewish family they faced

discrimination and hatred and would "be judged by their religion."  Mrs. Katkov writes that

David realizes his criminal behavior "is not the legacy he wants to leave his children."

While David loves and is loved by his mother, his sister, Regina and brother, Bertram

(their letter is fourth in Ex. 2), he has also maintained a strong bond with his ex-wife, Renata

Sobol, and her mother, Asiya Nikolayeva.  Their letters to Your Honor are in Ex. 2, the first and

the last, respectively.  As David himself wrote in his letter to the Court, he has discovered who

his true friends are.  He wrote they have helped him "like they are still my family."  Mrs.

Nikolayeva writes:  "We took David back into our home and into our lives during this difficult

period, because I know that he is a good and decent person."  Magistrate Judge Tsuchida joked

during the hearing at which he ordered David's release on bond that he would have a harder task

master perhaps than the Court or any detention center guard by being in his mother-in-law's

home.

David's ex-wife Renata explains that she and David "were able to set our egos aside and

reconcile as two civilized adults, and mainly two parents."  (final letter in Ex. 2).  She describes

Defendant David Sobol's Sentencing Memorandum in case
no. CR09-0084-MJP
– page 16 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

David as an "amazing father."  She was abandoned by her own father (similar to David's own experience, see PSR at ¶ 60), and writes that her "heart is filled with true joy for the fact that my daughter is blessed to have a dad like David."

David's letter to Your Honor is attached to the PSR.  He apologizes to the Court, his family and all persons he hurt.  In acknowledging that he alone is responsible for finding himself being sentenced for committing a crime, he hopes the Court can "see that this is not the person I want to be and is definitely not how I was raised to be."  He wants Your Honor to know that he is a good person at heart.  He thanks those who have shown unwavering love and support during this difficult time in his life and hopes that someday he can repay his debt to them.  He expresses his intention to become a contributing member of our community again.  David vows that he will never place himself in a situation again in which he must lose contact with V. and R.  His awareness of how precious his time with them is, how he can never regain the days he could not spend with them will motivate him to redeem himself.  "I want to redeem myself for my young children so they can be proud of their father.  I ask you for another chance to show that I can be an honest and decent human being again."

As noted in Alla Sobol's Sentencing Memorandum at 23, lines 9-26, and at 24, lines 1-6, David and Alla have both settled with ING Bank in case no. CV09-00124-TSZ.  This settlement does demonstrate an extraordinary acceptance of responsibility by David.

David is in early middle age, a factor which many studies of recidivism have shown greatly decreases the risk of reoffending.  David has no criminal history.  Lack of criminal history is not entirely accounted for by CHC I because "a defendant with minor criminal history can still fall within Criminal History Level I." *Autery*, 555 F.3d at 874.  Therefore a district court may properly consider complete lack of criminal history as a mitigating factor. *Id*.  And

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP – page 17 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

the district judge who sentenced Mr. Autery noted that he had no history of substance abuse, no instability or sociopathic attitudes, was motivated and intelligent and had the support of his wife and children.  *Id*.  The Ninth Circuit found such considerations entirely appropriate because: "Each of those attributes, in the reasonable judgment of the court, increases the likelihood that Autery can again become a productive, non-threatening member of free society, thus making more severe punishment less appropriate than if Autery lacked those characteristics."  *Id*.  David also has these characteristics.

David Sobol's post-offense behavior has demonstrated that he is already deterred from criminal behavior.  The public will be adequately protected by having him serve a probationary sentence with conditions that severely restrict his autonomy and permit probation to monitor him closely.  Indeed, in *Autery*, the Ninth Circuit noted that while a probationary sentence is itself a deterrent to future criminal conduct, a "further deterrent" was the sentencing judge's admonition that any violations of probation conditions would result in a sentence of "the maximum penalty allowed by law."  *Id*. at 876.  David understands that if he were to violate conditions, punishment would be swift and harsh.

**The Need to Provide the Defendant with Correctional Treatment and the Need to Provide Restitution**

These factors set forth in Section 3553(a) certainly weigh heavily in favor of a sentence of custody in a halfway house in lieu of total incarceration.  The court must consider "the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner...."  The Ninth Circuit has held that "the sole objective of § 3553(a)(2)(D) is not punishment, but the defendant's rehabilitation."  *Autery*, 555 F.3d at 877.  The sentence we advocate would punish David in the most effective, and most cost-effective, manner, while providing for David's rehabilitation.

Defendant David Sobol's Sentencing Memorandum in case no. CR09-0084-MJP – page 18 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA 98121
(206) 343-7642

The need to provide restitution militates in favor of less incarceration since David Sobol can not earn money to pay restitution while incarcerated.

**Disparity**

Finally, disparity, does not weigh in favor of a guideline range sentence for David. The government writes that they anticipate "seeking a custodial term of no more than that sought for Mr. Sobol" for Ms. Baydovskiy. Govt's Sentencing Memorandum at 18, lines 14-15. As argued in this Memorandum David's participation in the fraud was less than Donata's and he therefore at the least deserves no greater custodial term than she does.

**Conclusion**

We respectfully ask this Court to impose five years of probation that includes a year of custody in a community corrections facility, and the other conditions recommended by probation. Such a sentence which would promote David's rehabilitation and would constitute sufficient punishment, while not greater punishment than necessary. Such a sentence, given all of the other negative, life-long consequences this conviction is having on David's life, is certainly deterrence not just to David, but to others. David Sobol welcomes the support that being on supervision will offer to him in his efforts to pay for his crime, by serving his sentence and paying restitution, and by being present for his young children, whose need for him cannot be overstated.

DATED this 2nd day of December 2009.

Respectfully submitted,

*s/Catherine Chaney*
Catherine Chaney, WSBA No. 21405
Attorney for David Sobol

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642

1

3

5

7

<u>CERTIFICATE OF SERVICE</u>

9          I certify under penalty of perjury that I filed this memorandum and the accompanying exhibits

11 through ECF.  ECF will provide notice to AUSAs James Oesterle and Carl Blackstone.  I also emailed a

copy of this memorandum to U.S. Probation Officer Andrew Lorenzen.

13 DATED this 2nd day of December, 2009.                    *s/Catherine Chaney*
                                                                Catherine Chaney
15

17

19

21

23

25

27

29

31

33

35

37

39

41

43

45

47

49

Defendant David Sobol's Sentencing Memorandum in case
no. CR09-0084-MJP
– page 20 of 20

LAW OFFICE OF CATHERINE CHANEY
2606 Second Avenue # 284, Seattle, WA  98121
(206) 343-7642